McKinney, J.,
delivered the opinion of the Court.
On the 15th of July, 1846, the defendant, Hannah Smith, (being then a married woman,) bargained and covenanted to convey to Hannah Higgins (a free woman of color) a lot of ground in Nashville, for the consideration of $350. The bond for title recites that $200 of the purchase money was paid down, and a note executed for the residue, due on the 5th of September, 1847; upon payment of which, said Hannah Smith bound herself in the penalty of $700, to make the purchaser a good and sufficient title to said lot.
The lot in question was conveyed by Alfred Balch *210 to Hannah Smith, on the 22d of September, 1845 — she being, at the date of the conveyance, a feme covert. It is intimated in the record that the purchase money ivas paid by the husband, and that the conveyance ivas to the wife, to protect the property from the husband’s creditors.
It is admitted in the answer that the price of the lot was fully paid by the purchaser. And it is also shown, that, in pursuance to the title bond, the defendant, Richard Smith, husband of said Hannah Smith, executed a conveyance' to the purchaser for said lot, but the defendant, Hannah, utterly refused to join therein. She distinctly admits the payment in full of the purchase money, but states that it was paid to her husband. The proof tends to establish that her husband received it as her agent, though the fact is not very clearly made out.
Hannah Higgins was put in possession of the lot at the time of the purchase, and continued in possession until her death, which took place in March, 1856. Complainant, Cataulis, is her sole heir-at-law, and the other complainant is the administrator of her estate.
In December, 1855, the defendant, Hannah Smith, caused an action of ejectment to be instituted to oust said Higgins of the possession of said lot; and, after hor death, the suit was revived against the complainant, as her heir-at-law.
This bill was then brought to have a specific execution of the contract, or, if that be not allowable, to have the purchase money refunded, and compensation for improvements, with a prayer for general relief, and, in the meantime, to have the action of ejectment enjoined.
*211 The Chancellor refused a specific execution, hut decreed that the purchase money should he refunded, with interest, and declared it a lien upon the lot; and also decreed, that improvements, which had enhanced the permanent value of the lot should, he set off against the rents.
We think the decree refusing to execute the contract was proper. It is not pretended that Mrs. Smith was invested with any power to sell or convey the lot as a feme sole; and being a married woman, her covenant to convey was, simply, void.
But though this he so, it must he borne in mind that the legal disability of coverture, or of infancy, carries with it no license or privilege to practice fraud or deception on other innocent persons; nor will the disability he permitted to protect them in doing so. Barham v. Turheville, 1 Swan, 437; 1 Story’s Eq., § 385, and note 3 ; 2 Kent’s Com., 240.
The attempt, on the part of Mrs. Smith, to avoid the contract by resorting to a recovery in ejectment, without restoring the purchase money, was an aggravated fraud against an innocent- purchaser, whose caste and condition entitled her to expect the observance of good faith on the part of those .who had dealings with her.
It is well settled, in equity, that an infant cannot avoid a sale made by him during infancy, without refunding the consideration money. Smith v. Evans, 5 Hum., 70. And we understand the principle to be, alike, applicable to a married woman.
But it is assumed in the argument, that, inasmuch - as Mrs. Smith is not actively invoking the aid of a Court of Equity to restore her to the possession of the *212 lot, but has elected to resort to the legal forum, which is not possessed of the power to compel her to do equity, or to impose terms as a condition of granting relief, it is not competent to a Court of Equity, at the instance of the purchaser, to compel her to refund the purchase money; that the remedy of the purchaser, if any exists, is at law. The first answer to this objection is, that there being no demurrer to the bill, no exception can be taken to the jurisdiction on the hearing. But, this consideration aside, we think it would be sticking in the bark to hold, that, although a Court of Equity would not permit Mrs. Smith to recover the lot without restoring the consideration money, yet it is powerless to restrain her from doing so at law. If, upon an immutable principle of natural justice, the defendant be bound to refund the purchase money before being entitled to demand back the property sold, shall her fraudulent artifice of resorting to a Court of Law, in order to evade the repayment, debar a Court of Equity, on the application of the purchaser, from compelling her to do equity?
But if we were to admit the law to be so, though we do not, still, upon the facts of this case, we think the decree ordering the repayment of the purchase money, and making it a lien upon the lot, was proper, in a different view, and is maintainable upon a well established general principle. The purchaser had an undoubted right to come into a Court of Equity, without regard to the action of ejectment, to obtain either a specific execution, or rescission of the contract. The husband was willing that the contract should be executed, and if the wife had voluntarily assented thereto, there can be no question but the Court might have so decreed. But *213 having refused, as was her right, there can be as little doubt that the Court might decree a rescission; and as incident to the latter relief, it was clearly competent to declare a lien upon the lot to secure the repayment of the purchase money — and this against a married woman, as much as against one free from disability, upon the principle that such disability cannot be a protection against fraud.
The decree will be affirmed.